# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: March 17, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * * | UNPUBLISHED | |
| TONYA CLARK, * | | |
| * | No. 18-1673V | |
| Petitioner, * | | |
| v. * | Special Master Gowen | |
| * | | |
| SECRETARY OF HEALTH * | Dismissal; Failure to Prosecute; | |
| AND HUMAN SERVICES, * | Insufficient Proof. | |
| * | | |
| Respondent. * | | |
| * * * * * * * * * * * * * | | |

*Tonya Clark*, Junction City, KS, *pro se* petitioner.
*Althea W. Davis*, United States Department of Justice, Washington, DC, for respondent.

## DECISION[1]

On October 29, 2018, Tonya Clark ("petitioner") filed a petition within the National Vaccine Injury Compensation Program.[2,3] Petitioner alleges that she received an influenza ("flu") vaccination on November 9, 2015, and that as a result of receiving this vaccination, she developed peripheral neuropathy. *Id.* The information in the record, however, does not show entitlement to an award from the Vaccine Program.

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), **because this opinion contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

[3] Petitioner also filed a motion to proceed *in forma pauperis*, which was granted by my order issued on December 14, 2018. Thus, petitioner was not required to pay the $400 fee typically associated with a petition in the Vaccine Program.

## I.  Procedural History[4]

Petitioner, acting *pro se*, filed the petition on October 29, 2018.  She did not file any medical records or other evidence to support this claim.  In the petition, she states that "documents and affidavits have been requested and will be submitted once they are received." *Id.* at ¶ 7.

On December 14, 2018, I held an initial status conference with petitioner and respondent's counsel.   I strongly encouraged petitioner to retain an attorney.  Petitioner stated that she had been communicating with the Conway Homer law firm, that was considering her case.  Petitioner was ordered to have an attorney enter the case within thirty (30) days, by January 17, 2019.  Petitioner was mailed a copy of this order and a list of attorneys who take vaccine cases.

Petitioner did not meet this deadline.  Instead, on January 22, 2019, she telephoned the law clerk assigned to this case.  She requested additional time to mail the December 18, 2018 scheduling order to the law firm that was considering her case and to have an attorney enter the case.  I granted petitioner's motion, giving her an additional thirty (30) days, until February 21, 2019.

Petitioner did not meet this deadline.  The law clerk telephoned and emailed petitioner several times without success.  Finally, on March 21, 2019, petitioner filed a motion for additional time, of at least two months, to have an attorney enter the case.  On April 8, 2019, I held another status conference with petitioner and respondent's counsel.  Petitioner stated that the Conway Homer law firm was still considering her case.  That law firm had obtained petitioner's neurology records but was waiting for other records.  I granted petitioner's motion.  I ordered her to have an attorney enter the case <u>and</u> file all medical records that have been obtained to date within sixty (60) days, by June 7, 2019.

Petitioner did not meet this deadline.  Instead, on June 13, 2019, petitioner filed a motion for extension of time.  She stated that the Conway Homer law firm had turned down her case because she had been diagnosed with lupus.[5]  She stated that the Conway Homer law firm did not take cases alleging that vaccines caused this condition.  She requested "at least a couple more months" to find a different attorney to take her case.  Petitioner's motion was accompanied by three pages of medical records.  I granted petitioner's motion and ordered her to have an attorney to enter the case within sixty (60) days, by August 19, 2019.

---

[4] This section is in large part repeated from the first order to show cause filed on January 9, 2020 (ECF No. 24).

[5] A well-regarded medical dictionary defines systemic lupus erythematosus ("SLE") as "a chronic, inflammatory, often febrile multisystemic disorder of connective tissue that proceeds through remissions and relapses; it may be either acute or insidious in onset and is characterized principally by involvement of the skin (*cutaneous* l. erythematosus), joints, kidneys, and serosal membranes.  The etiology is unknown, but it may be a failure of regulatory mechanisms of the autoimmune system, since there are high levels of numerous autoantibodies against nuclear and cytoplasmic cellular components.  The condition is marked by a wide variety of abnormalities, including arthritis, arthralgias, nephritis, central nervous system manifestations, pleurisy, pericarditis, leukopenia or thrombocytopenia, hemolytic anemia, an elevated erythrocyte sedimentation rate, and the presence in the blood of distinctive cells called LE cells." *Dorland's Illustrated Medical Dictionary* 32nd Ed. (2012) (hereinafter "*Dorland's*") at 1080.

Petitioner did not meet this deadline. Instead, on September 5, 2019, petitioner filed a motion for extension of time. She stated that her lab results were consistent with both lupus and mixed connective tissue disease.[6] She stated that the Law Office of Sylvia Chin-Caplan was considering her claim, but turned it down based on a "lack of evidence to support [that petitioner] wasn't sick beforehand." Petitioner requested unspecified additional time to provide an assessment proving that she wasn't sick beforehand to the law office. I ordered petitioner to file all records in her possession within thirty (30) days, by October 7, 2019. I granted petitioner's motion and ordered her to have an attorney enter the case within sixty (60) days, by November 5, 2019.

On September 30, 2019, petitioner filed a handwritten letter and thirty-three (33) pages of medical records. These include an August 27, 2015 appointment in which petitioner established care with a new primary care provider. Petitioner endorsed various issues including thyroid disease, polyarthralgia, and anemia. There is a September 16, 2015 record from the same primary care provider, at which petitioner was observed to have scattered pinpoint papular lesions and erythematosus on her bilateral forearms and upper abdomen. There is an October 9, 2015 record from Geary Community Hospital in Junction City, Kansas, where petitioner underwent bloodwork. Her red blood count was 4.2 mill/ cm3 (low, compared to a reference range of 4.6 – 6.2 mill/ cm3). Her hemoglobin count was 11.3 g/ dL (low, compared to a reference range of 12.0 – 16.0 g/ dL). Her platelet count was 432 Thou/ cm3 (high, compared to a reference range of 150 – 400 Thou/ cm3).[7]

Petitioner did not meet the deadline to have an attorney enter the case by November 5, 2019. Instead, on November 4, 2019, she filed another motion for extension of time. She stated that she was still working to prove that she did not have lupus and/or mixed connective tissue disease. She was waiting to hear back from the law firm of Mark T. Sadaka, LLC ("the Sadaka firm"). She requested an unspecified extension of time. I granted petitioner's motion. I ordered her to file any additional medical records and other evidence and to have an attorney enter the case within 45 days, by December 20, 2019.

Petitioner did not meet this deadline. Instead, on December 23, 2019, she filed a motion for extension of time. She still hadn't retained an attorney to represent her in this case. She stated that she was still working with the Sadaka firm. She stated that she was working to provide them the records to prove that she wasn't sick before the flu vaccine.[8] Petitioner requested an unspecified extension of time to have an attorney enter the case.

---

[6] Mixed connective tissue disease is "a disorder combining features of scleroderma, myositis, systemic lupus erythematosus, and rheumatoid arthritis, and marked serologically by the presence of antibody against extractable nuclear antigen." *Dorland's* at 539.

[7] Petitioner also filed a copy of a handwritten record of administration of a flu vaccine at Dillons Pharmacy in Junction City, Kansas. This record reflects petitioner's name, address, date of birth, gender, age, and primary care provider's name. The bottom of the record, where the vaccine recipient presumably would write her name and the date, is cut off. It is noted that if petitioner were to proceed with this case, she would be required to file a better copy of this record and/or other records confirming the date on which she received the flu vaccine.

[8] Petitioner also stated that she was working to prove "how dangerous and toxic Thimerosal is to the human body." It is noted that petitioner has filed a copy of a handwritten vaccine administration record. In addition to not including petitioner's signature and the date of vaccine administration, this record does not indicate which specific

On January 8, 2020, I issued an "Order to Show Cause", which stated:

> In this case, petitioner has been working on filing records to support her claim and to have an attorney represent her for over one year. The limited records do not appear to be complete. Several attorneys have turned down her case, citing concerns that her medical condition existed before and was not caused by the flu vaccine allegedly received on November 9, 2015.

Order to Show Cause (ECF No. 24) at 2. Petitioner was "warned that her inaction and failure to abide by court orders may be interpreted as a failure to prosecute the claim, which can result in the dismissal of the petition. *See Tsekouras v. Sec'y of Health & Human Servs.*, 26 Cl. Ct. 439 1992, *aff'd per curiam without opin.*, 991 F.2d 810 (Fed. Cir. 1993); *Sapharas v. Sec'y of Health & Human Servs.*, 35 Fed. Cl 503 (1996); Vaccine Rule 21(b)." Petitioner was "**ORDERED to have an attorney enter the case on her behalf OR show other cause why the petition should not be dismissed within 30 days, by Friday, February 7, 2020.**" Furthermore: "**Failure to file a response to this Order to Show Cause will result in involuntary dismissal of petitioner's claim for insufficient proof and for failure to prosecute.**"

Petitioner did not have an attorney enter the case on her behalf by the deadline. Instead, on February 4, 2020, she filed a motion for extension of time to have an attorney enter the case. As detailed therein, petitioner believed that she had a legitimate case. She had been following up with the Sadaka firm, which had her medical records for about two months. *Id.* She had not heard back to date but would give them another call that week.

On February 6, 2020, I issued a second order to show cause. Petitioner was "**ORDERED to send a copy of [the second order to show cause], and the prior order to show cause dated January 9, 2020, to the law firm of Mark Sadaka & Associates promptly and without delay.**" She was "**ORDERED to file proof that she has done so promptly and no later than within 7 days, by Thursday, February 13, 2020.**" She was "**ORDERED to have an attorney enter the case on her behalf OR show other cause why the petition should not be dismissed within 30 days, by Monday, March 9, 2020.**" It was stated again that failure to respond to the order to show cause would result in involuntary dismissal for insufficient proof and for failure to prosecute.

On February 21, 2020, petitioner emailed the law clerk assigned to the case. Petitioner advised that she had just received the second order to show cause filed on February 6, 2020. Therefore, she did not comply with the deadline to send the two orders to show cause to the Sadaka firm by 02/13/2020. The law clerk said that petitioner should send the orders to the law

---

flu vaccine that petitioner received. Preliminary research indicates that only certain flu vaccines administered during the 2015 – 2016 flu season contained thimerosal. *See* Centers for Disease Control and Prevention (CDC) *Prevention and Control of Influenza with Vaccines: Recommendations of the Advisory Committee on Immunization Practices, United States, 2015 – 16 Influenza Season*, available at https://www.cdc.gov/mmwr/preview/mmwrhtml/mm6430a3.htm. If petitioner were to proceed with this case and allege that she was injured by thimerosal, she would be required to provide evidence that the specific vaccine she received contained thimerosal. Additionally, in my experience, other petitioners in the Vaccine Program have not been successful in proving that the thimerosal in vaccines causes harm.

firm and file proof that she had done so, promptly and without delay.

On February 28, 2020 after close of business hours, petitioner emailed the law clerk managing this case and attached proof that she had sent the Court's two Orders to Show Cause to the Sadaka firm. On 03/02/2020, the law clerk responded. The law clerk noted that the 02/06/2020 Order to Show Cause directed petitioner to file said proof with the Court (by mail).

To date, the Court has not received proof that petitioner has sent the two Orders to Show Cause to the Sadaka firm or a motion to substitute counsel.

## II. Analysis

Petitioner's claim may properly be dismissed for failure to comply with my orders. A petitioner's inaction and failure to abide by a special master's order risks dismissal of a claim. *Tsekouras v. Sec'y of Health & Human Servs.*, 26 Cl. Ct. 439 1992, *aff'd per curiam without opin.*, 991 F.2d 810 (Fed. Cir. 1993); *Sapharas v. Sec'y of Health & Human Servs.*, 35 Fed. Cl 503 (1996); Vaccine Rule 21(b). In this case, beginning over one year ago in December 2018, petitioner was ordered to seek representation by an attorney. She has disclosed that several firms have turned her down. Another law firm has been in possession of her medical records for several months but has not responded to her inquiries. Based on petitioner's email to my law clerk, it does appear that petitioner faxed the two orders to show cause to that firm on February 28, 2020. However, petitioner has not properly filed that proof, a motion to substitute counsel, or a motion for extension of time. Neither petitioner nor that firm has otherwise contacted the Court. In summary, petitioner has not complied with my multiple orders to have an attorney enter the case or for her to show other cause why the case should not be dismissed.

Additionally, petitioner's claim may properly be dismissed on substantive grounds. A petitioner has the burden of establishing entitlement to compensation through one of two ways. The first way is to establish that the vaccinee suffered a "Table Injury," i.e., that he or she received a vaccine listed on the Vaccine Injury Table and subsequently developed a corresponding injury within a corresponding period of time. § 300aa-11(c)(1). In the present case, petitioner does not allege, nor do the medical records indicate, that petitioner suffered a Table Injury.

Thus, petitioner must proceed on the second route – she must establish that the vaccine actually caused (or "caused in fact") the onset or significant aggravation of a condition she suffered. § 300aa-13(a)(1)(A). Under the relevant test, petitioner must establish (1) a medical theory; (2) a logical sequence of cause and effect; and (3) a medically acceptable temporal relationship between the vaccination and the injury. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). While petitioner originally alleged that the flu vaccination caused her to develop "peripheral neuropathy", *see* Petition at Preamble, in the motion for extension of time filed on September 5, 2019, petitioner stated that her lab results are consistent with both lupus and mixed connective tissue disease. Petitioner acknowledges that several attorneys have turned down her case citing concerns that her medical condition existed before and was not caused by the flu vaccination.

On September 30, 2019, petitioner filed the only medical records in this case, consisting of approximately thirty pages. As noted above in the procedural history, these medical records establish that petitioner had symptoms including arthralgias, low blood counts, and rash prior to receiving the flu vaccination on November 9, 2015. A preliminary review of publicly available information (cited above) suggests that these symptoms could be consistent with lupus and/or mixed connective tissue disease. Moreover, petitioner has not filed an expert report addressing her pre-existing condition and alleging that the flu vaccination can and did significantly aggravate her condition. Therefore, it is appropriate to dismiss petitioner's claim for insufficient proof.

### III.   Conclusion

This case is dismissed for failure to prosecute and for insufficient proof. In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith. [9]

**IT IS SO ORDERED.**

s/ *Thomas L. Gowen*
**Thomas L. Gowen**
Special Master

---

[9] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review. Vaccine Rule 11(a).